**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JANNIECE GARNER,
　　　　　　Appellant,

　　　　　v.

DEPARTMENT OF COMMERCE,
　　　　　　Agency.

DOCKET NUMBER
AT-0752-18-0357-I-1

DATE: March 28, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Kalven L. Trice</u>, Little Rock, Arkansas, for the appellant.

<u>Scott Wallace Burton</u>, Esquire, Suitland, Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

**FINAL ORDER**

¶1　　　　The appellant has filed a petition for review of the initial decision, which sustained her removal. For the reasons discussed below, we GRANT the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

appellant's petition for review, REVERSE the initial decision, and DO NOT SUSTAIN the appellant's removal.

## BACKGROUND

¶2 The agency removed the appellant from her GS-4 Field Representative position—the duties of which included conducting census activities with the U.S. Census Bureau—based on a charge of Failure to Properly Secure Government Issued Property. Initial Appeal File (IAF), Tab 4 at 22, 23-26, 33-36. Specifically, the agency charged that, between September 2 and September 6, 2017, the appellant lost from her home her government-issued laptop computer, *id*. at 33, which she used to conduct and submit surveys for the agency. In support of the removal penalty, the agency relied on the appellant's prior discipline consisting of an official reprimand for failing to secure another government-issued laptop computer.[3] *Id*. at 34.

¶3 The appellant appealed the agency's action. IAF, Tab 1. Although initially she requested a hearing, *id*. at 2, during the proceedings below she withdrew her request, IAF, Tab 26. Based on the written record, the administrative judge found that the agency proved the charge and that removal promoted the efficiency of the service and was a reasonable penalty. IAF, Tab 33, Initial Decision (ID) at 3-8. She also found that the appellant failed to prove her affirmative defenses of a violation of due process, harmful procedural error, and discrimination based on race and sex. ID at 8-16.

¶4 In her petition for review, the appellant disagrees with the administrative judge's findings. She contends that the agency failed to prove the charge, Petition for Review (PFR) File, Tab 1 at 7-8, and that removal was not a

---

[3] On July 13, 2017, the appellant's government-issued laptop was stolen from her car. IAF, Tab 4 at 45. The appellant had left the laptop in the front passenger foot well of her vehicle where it was visible. *Id*. Leaving a laptop in such a location is contrary to an agency regulation providing that, when not in use, the laptop should be placed out of sight in the trunk of the car. *Id*.

reasonable penalty, *id*. at 8-10. She also contends that she proved her affirmative defenses. *Id*. at 17-22. The agency has responded in opposition to the petition. PFR File, Tab 6.

## ANALYSIS

### The agency failed to prove its charge.

¶5    In an appeal in which a Federal agency takes an adverse action against a tenured employee, the Board will sustain the action if the charges are supported by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B). A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q). Here, as noted, the agency charged the appellant with Failure to Properly Secure Government Issued Property. IAF, Tab 4 at 33. In support of the charge, the agency relied on the requirement of its Administrative Handbook that employees must "[s]tore laptops, questionnaires and other materials in [their] home or hotel room, in a secure place that is not visible." *Id*. at 33, 68.

¶6    Here, the appellant has consistently stated that she complied with the requirements of the Administrative Handbook. In the September 6, 2017 email reporting the loss of the computer to her supervisor, she stated that she had "last had [the laptop] in [her] house."[4] *Id*. at 39. In her response to the notice of proposed removal, the appellant stated that she could not "explain [her] computer being stolen" and that she "followed the proper procedure in reporting the incidents and filed necessary police reports." *Id*. at 29. In the September 13, 2017 Incident Report filed with the Memphis Police, the appellant reported the

---

[4] In that email, the appellant also stated that she had reported the loss to the appropriate agency office and gave her supervisor the assigned case number. IAF, Tab 4 at 39. Such reporting complies with equipment loss reporting guidance provided in the Administrative Handbook. *Id*. at 66.

laptop stolen from her residence. IAF, Tab 19 at 92-94. During her deposition under oath, the appellant maintained that her laptop was stolen from her home. IAF, Tab 20 at 177. She stated that she stored the laptop in her bedroom closet. *Id*. at 178. She responded to agency counsel's questions regarding whether she securely stored the laptop, stating that she locked her doors when she was away from home and that she was away on September 2, 2017. *Id*. at 178-79. The appellant acknowledged that her brother and parents had keys to her house but stated that they told her that they had not accessed the house between September 2 and 6, 2017. *Id*. at 179.

¶7        The appellant also stated that she filed a stolen property/burglary report with the police and provided a copy of that report to the agency. She stated that she faxed a copy of the police report to B.M., a security specialist, *id*. at 128, 170-71, on September 26, 2017, as instructed by A.M., her second-level supervisor, *id*. at 181.

¶8        The agency's argument that the appellant failed to comply with the requirements of the Administrative Handbook is not reflected in the testimony of the proposing and deciding officials in their depositions. *Id*. at 41, 112. The proposing official stated that the facts were that an employee left a laptop that was in her car, not in the trunk, which is what the agency requires, and then very shortly thereafter, she had a second laptop removed. *Id*. at 59. The proposing official stated that, once she was notified that there were two laptops that were missing in a short amount of time, the documentation was assembled by the regional office to give to the Employee Relations Board[5] for their review so that

---

[5] In her petition for review, the appellant contends that she was denied due process because the Employee Relations Board unduly influenced the agency to remove her. We have not addressed whether the agency violated the appellant's due process rights because we have reversed the agency's action and the appellant could not obtain an additional remedy were she to prove a due process violation. *See Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶¶ 7, 25 (2011), *aff'd*, 484 F. App'x 489 (Fed. Cir. 2012).

they could look at what happened and the circumstances and make sure it was consistent with the agency's policy to recommend an action. *Id*. In short, the proposing official initiated the disciplinary process simply because the appellant had lost two laptops. The agency presented no evidence to show that the proposing official considered the circumstances surrounding the second computer's loss in connection with the requirements of the Administrative Handbook.

¶9 Similarly, the agency presented no evidence that the deciding official considered the circumstances surrounding the second computer's loss in light of the requirements of the Administrative Handbook. The deciding official stated that the fact that the appellant lost a second laptop in less than five weeks was all the information that he had. *Id*. at 126. He admitted that he did not have any other information regarding the circumstances of the loss of the second computer. *Id*. He stated that he believed removal was warranted because "there was a second laptop lost,"[6] and the second laptop was "lost in the complainant's home." *Id*. at 129. Further, the deciding official stated that he did not believe that the losses were beyond the appellant's control.[7] *Id*. at 131.

¶10 We find that the agency presented no evidence contradicting the appellant's detailed statement that she followed the requirements of the Administrative Handbook. Further, we find that the appellant's statement of compliance, that she

---

[6] It might be inferred from the deciding official's deposition testimony that he believed that the charge was based on the loss of two laptop computers in a short period of time. However, although the notice of proposed removal references the loss of two laptops in a short period of the time, the charge is Failure to Properly Secure Government Issued Property, specifically the laptop that went missing from the appellant's house between September 2 and September 6, 2017. IAF, Tab 4 at 33-34.

[7] For unexplained reasons, the September 13, 2017 Incident Report was not provided to the deciding official, even though the appellant stated that she provided it to the agency. When the deciding official was presented with the Incident Report during his deposition, he mistakenly believed that it was the Incident Report filed when the laptop was stolen from the appellant's car. IAF, Tab 20 at 131-32.

stored the laptop in the closet of her bedroom in her locked house, is credible. She made no prior inconsistent statements, and her version of events is uncontradicted and consistent with other evidence, including the reports she made to her supervisor, the appropriate agency office, and the police. *See Goode v. Defense Logistics Agency*, 45 M.S.P.R. 671, 674 n. 2 (1990) (finding that the principles for resolving credibility issues are properly applied to cases that do not involve a hearing); *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (finding that, in resolving credibility issues, the Board considers, among other things, any prior inconsistent statement by the individual and the contradiction of the individual's version of events by other evidence or its consistency with other evidence). The Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 7 (2016). Thus, we reverse the initial decision's findings regarding the charge and find that, given that it did not show any noncompliance by the appellant with its Administrative Handbook, the agency failed to prove the charge of Failure to Properly Secure Government Issued Property.[8]

## The appellant failed to prove her affirmative defenses of race and sex discrimination.

¶11    The appellant alleges on review that she sought to gather evidence relevant to her allegations of race and sex discrimination on the basis of disparate treatment through discovery and that these efforts were hindered by the agency's failure to respond to her interrogatories and the administrative judge's denial of her motion to compel. PFR File, Tab 1 at 20-21.

---

[8] The appellant alleges that the administrative judge abused her discretion by denying the appellant's motion to compel discovery and denying a number of witnesses requested by the appellant. PFR File, Tab 1 at 14-17. We need not address these allegations in connection with the merits of the charge given our determination that the agency has not proven the charge.

¶12    Discovery is the process by which a party may obtain relevant information from another party to an appeal. 5 C.F.R. § 1201.72(a). Relevant information includes "information that appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* What constitutes relevant information in discovery is to be liberally interpreted, and uncertainty should be resolved in favor of the movant absent any undue delay or hardship caused by such request. *Mc Grath v. Department of the Army*, 83 M.S.P.R. 48, ¶ 7 (1999). A party to whom a proper discovery request has been made must either comply or "stat[e] an objection to the particular request and the reasons for the objection." 5 C.F.R. § 1201.73(b). The scope of discovery is broad: "[d]iscovery covers any nonprivileged matter that is relevant to the issues involved in the appeal . . . ." *Baird v. Department of the Army*, 517 F.3d 1345, 1351 (Fed. Cir. 2008); 5 C.F.R. § 1201.72(b).

¶13    The appellant was entitled to obtain evidence through discovery to support her claim of disparate treatment race and sex discrimination. *See Redd v. U.S. Postal Service*, 101 M.S.P.R. 182, ¶ 15 (2006), *overruled on other grounds by Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 46 n.10 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25. The relevance of the appellant's discovery requests focuses on the extent to which each request is reasonably calculated to lead to the discovery of admissible evidence in light of the factual matters in dispute. *See Ryan v. Department of the Air Force*, 113 M.S.P.R. 27, ¶ 19 (2009). Here, the factual matter in dispute is whether the agency treated the appellant disparately from another similarly-situated employee of a different race and sex. For employees to be deemed similarly situated for purposes of an affirmative defense of discrimination based on disparate treatment, all relevant aspects of the appellant's employment situation must be "nearly identical" to those of the comparator employees. *Adams v. Department of Labor*, 112 M.S.P.R. 288, ¶ 13 (2009). Therefore, comparators must have reported to the same supervisor, been subjected

to the same standards governing discipline, and engaged in conduct similar to the appellant's without differentiating or mitigating circumstances. *Id.*

¶14 The appellant's efforts to gather relevant evidence regarding alleged disparate treatment were not hindered by any agency failure to respond to the interrogatories challenged on review. *See generally* IAF, Tabs 13, 15. Specifically, to the appellant's Interrogatory No. 13, "Please identify all employees under the supervision of Appellant's first-line and second-line supervisors that have imposed Alternative Discipline for three years prior to Appellant's letter of removal. Please provide race and gender of Employees provided Alternative Discipline and race and gender of supervisors," the agency responded, "The Agency reserves the right to supplement this Answer. No Alternative Discipline was administered by [A.M.] or [T.N.] for similarly situated employees in the last three years prior to Appellant's removal." IAF, Tab 13 at 16. To the appellant's Interrogatory No. 14, "Please identify all employees under the supervision of Appellant's first-line and second-line supervisors that have imposed Progressive Discipline for three years prior to Appellant's letter of removal. Please provide race and gender of Employees provided Alternative Discipline and race and gender of supervisors," the agency responded, "Agency objects on the grounds that the Interrogatory is vague because of the term 'Progressive Discipline.' Also, Agency objects to sentence two of the Interrogatory in that it is duplicative of Interrogatory 13." *Id.* at 17.

¶15 The administrative judge denied the appellant's motion to compel. IAF, Tab 16. Based on the evidence showing the agency's responses to the above discovery requests, we find that the appellant's assertion on review that the agency hindered her efforts to discover relevant information regarding her affirmative defenses of race and sex discrimination by failing to respond to her interrogatories is unavailing. The administrative judge did not abuse her broad discretion in ruling on discovery matters in denying the appellant's motion to compel discovery regarding her allegations of race and sex discrimination,

particularly given that the above interrogatories do not seek information regarding similarly-situated comparators.  *See Boltz v. Social Security Administration*, 111 M.S.P.R. 568, ¶¶ 6-7 (2009); 5 C.F.R. § 1201.41(b)(4).

¶16        Further, the administrative judge properly found that the appellant failed to prove her allegations of race and sex discrimination.  In her deposition, the appellant testified that she was not aware of any other employee who misplaced or lost, had stolen, or otherwise lost possession of two government-issued laptops.  IAF, Tab 28 at 170-171.  Considering the evidence gained through discovery and the appellant's deposition statements, we agree with the administrative judge that the appellant failed to show that she was treated disparately based on race or sex.  ID at 13-16.

## ORDER

¶17        We ORDER the agency to cancel the removal and restore the appellant effective February 23, 2018.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶18        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶19        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has

taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶20    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶21    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                         /s/ for
                                    Jennifer Everling
                                    Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.