**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

DEBORAH VERONICA KHAN,
           Appellant,

      v.

DEPARTMENT OF JUSTICE,
           Agency.

DOCKET NUMBER
DC-0432-21-0205-I-4

DATE:  January 9, 2026

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Christopher H. Bonk, Esquire, and James A. Hill, Esquire, Silver Spring,
    Maryland, for the appellant.

Asmaa Abdul-Haqq, Esquire, and Anna Wang, Esquire, Washington, D.C.,
    for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which
sustained her chapter 43 removal.  Generally, we grant petitions such as this one
only in the following circumstances:  the initial decision contains erroneous
findings of material fact; the initial decision is based on an erroneous

---

[1]  A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law.  Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions.  In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find that the agency's performance standards as communicated to the appellant before the initiation of her Performance Improvement Plan (PIP) were valid, we AFFIRM the initial decision.

## BACKGROUND

The appellant began her employment with the agency in 2000 and last held the position of Information Technology Specialist, a GS-14 position, in the agency's Antitrust Division in Washington, D.C. *Khan v. Department of Justice*, MSPB Docket No. DC-0432-21-0205-I-4, Appeal File (I-4 AF), Tab 21 at 3, Stipulations 1-2. In October 2019, the agency issued the appellant her Fiscal Year (FY) 2020 Performance Work Plan (PWP), which identified six critical performance elements and described performance of those elements at the "successful" level. I-4 AF, Tab 5 at 508-14, Tab 21 at 3-4, Stipulations 6-9. The PWP identified five rating levels and defined each of the five rating levels based on the quality, quantity, manner, and/or timeliness of the performance. I-4 AF, Tab 5 at 508-09. The PWP stated that, if any critical element was rated "unacceptable," then the overall rating must be "unacceptable." *Id*. at 509.

By notice dated May 26, 2020, the agency informed the appellant that her performance was "unacceptable" in three critical performance elements—Job

Element (JE) 1, JE 3, and JE 5—and placed the appellant on a PIP for a period of 60 calendar days. I-4 AF, Tab 5 at 410-21, Tab 21 at 4, Stipulations 15, 18. The agency later extended the appellant's PIP through August 12, 2020, for a total PIP period of 79 calendar days. I-4 AF, Tab 5 at 236-37, 107, Tab 21 at 4, Stipulations 16-17. During the PIP, the appellant's first- and second-level supervisors met with the appellant weekly to discuss her performance and provided her with notes from the meetings. I-4 AF, Tab 5 at 243-367, Tab 21 at 5, Stipulations 24-26. The agency ultimately rated the appellant's FY 2020 performance "unacceptable" in critical performance element JE 1 and, therefore, rated her overall FY 2020 performance as "unacceptable." I-4 AF, Tab 19 at 15-17, Tab 21 at 6, Stipulations 28-29.

On November 6, 2020, the appellant's first-level supervisor proposed her removal based on unacceptable performance. I-4 AF, Tab 5 at 107-26. The appellant, through her legal representative, provided a written response to the proposal letter. *Id.* at 46-105. On December 30, 2020, her second-level supervisor issued a decision affirming her removal, effective that day. *Id.* at 31-44.

The appellant timely filed an appeal of her removal with the Board. *Khan v. Department of Justice*, MSPB Docket No. DC-0432-21-0205-I-1, Initial Appeal File (IAF), Tab 1. Her appeal was dismissed without prejudice three times due to potential Appointments Clause issues. I-4 AF, Tab 21 at 11-12, Stipulations 66-68. The instant appeal was refiled by the Board at the appellant's request. I-4 AF, Tabs 1-2. In addition to challenging her performance-based removal, the appellant raised affirmative defenses of retaliation for protected whistleblower activity and a violation of her due process right to a timely, post-deprivation hearing. IAF, Tab 1 at 6; I-4 AF, Tab 15 at 4-15. She withdrew her claim of whistleblower retaliation during the prehearing conference. I-4 AF, Tab 21 at 2, 12. After holding the appellant's requested hearing, the administrative judge issued an initial decision affirming the agency's chapter 43

removal action and finding that the appellant failed to prove her affirmative defense of a due process violation. I-4 AF, Tab 25, Initial Decision (ID).

The appellant has filed a petition for review challenging the administrative judge's findings affirming her removal. PFR (Petition for Review) File, Tab 3 at 7-23. She does not reraise any affirmative defenses. *Id.* The agency has responded in opposition to the appellant's petition for review, PFR File, Tab 7, and the appellant has replied to the agency's response, PFR File, Tab 8.

## DISCUSSION OF ARGUMENTS ON REVIEW

Since the U.S. Court of Appeals for the Federal Circuit issued its decision in *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355, 1360-61 (Fed. Cir. 2021), the Board has required the agency to defend an action under chapter 43 by proving the following by substantial evidence: (1) the Office of Personnel Management (OPM) approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the appellant's performance during the appraisal period was unacceptable in one or more critical elements; (5) the agency warned the appellant of the inadequacies in her performance during the appraisal period and gave her an adequate opportunity to demonstrate acceptable performance; and (6) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. *See Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15.

The appellant has not disputed that the agency's appraisal system was approved by OPM, I-4 AF, Tab 21 at 6, Stipulation 36; I-4 AF, Tab 5 at 523-25, but she argues that the agency failed to prove the remaining elements, I-4 AF, Tab 19; PFR File, Tab 3. In the initial decision, the administrative judge first addressed the requirement that the agency justify its institution of the PIP by showing that the appellant's performance was unacceptable before the PIP, and

she concluded that the agency proved unacceptable performance in JE 1, JE 3, and JE 5. ID at 6-19. The administrative judge next considered whether the agency's performance standard for JE 1—the only critical performance element on which it based its removal action—was valid. ID at 19-23. She determined that, while the agency's "minimally satisfactory" standard, read alone, failed to inform the appellant of what was necessary to obtain an acceptable level of performance, any lack of specificity inherent in the performance standard was cured by the agency's clear guidance during the PIP. ID at 22-23. She concluded that the agency proved the remaining elements of an opportunity to improve and continued unacceptable performance. ID at 23-48.

On review, the appellant argues that the administrative judge's decision is not in accordance with the Federal Circuit's decision in *Santos*, 990 F.3d at 1360-61, which she asserts requires the communication of valid performance standards before the agency's initiation of the PIP. PFR File, Tab 3 at 7-10. She argues that the administrative judge's finding—as she interprets it—that the agency did not communicate valid performance standards before issuing the PIP should have precluded the administrative judge from finding that her pre-PIP performance was unacceptable. *Id.* at 7-10, 23. The appellant further argues that the agency never clarified its invalid performance standards and incorrectly imposed upon the appellant a performance requirement of "successful" performance instead of "minimally satisfactory" performance. *Id.* at 10-23. She argues that, therefore, the Board must reverse the agency's removal action. *Id.*

We find no error in the administrative judge's finding that the agency's generic "minimally satisfactory" performance standard, read alone, was impermissibly vague. Nevertheless, we conclude that the Performance Work Plan, when read as a whole, passed muster.

Agency performance appraisal systems may include between two and five summary rating levels. *Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶ 14 (2011), *aff'd*, 484 F. App'x 489 (Fed. Cir. 2012); 5 C.F.R. § 430.208(d). Under any performance appraisal system, the lowest rating level is

"unacceptable," which is the only rating that will support removal under chapter 43. *Van Prichard*, 117 M.S.P.R. 88, ¶ 14; *see* 5 U.S.C. § 4302(b)(6); 5 C.F.R. §§ 430.206(b)(8), 430.207(c), 430.208(d). Under certain performance appraisal systems, performance of a critical element may fall between "fully successful" and "unacceptable." *Van Prichard*, 117 M.S.P.R. 88, ¶ 14; 5 C.F.R. §§ 430.207(c), 430.208(d). If an agency adopts such a performance appraisal system, an appellant's performance could be below "fully successful" without falling to the level that would support removal. *Van Prichard*, 117 M.S.P.R. 88, ¶ 14; 5 C.F.R. §§ 430.207(c)–(d), 430.208(d).

Here, as the administrative judge acknowledged, the PWP identified a five-tiered rating system, including a rating level of "minimally satisfactory" that fell between "successful" and "unacceptable." I-4 AF, Tab 5 at 508-09, Tab 21 at 3-4, Stipulations 6-10. Although it only described performance of each of the six critical elements at the "successful" level, it included general definitions of each of the five rating levels, which pertained to the quality, quantity, manner and/or timeliness of the performance. I-4 AF, Tab 5 at 508-14, Tab 21 at 4, Stipulation 10.

Performance standards must, to the maximum extent feasible, permit the accurate appraisal of performance based on objective criteria related to the job in question. 5 U.S.C. § 4302(c)(1); *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 21 (2013). Standards must be reasonable, realistic, attainable, and clearly stated in writing. *Towne*, 120 M.S.P.R. 239, ¶ 21. Performance standards should be specific enough to provide an employee with a firm benchmark toward which to aim her performance and must be sufficiently precise so as to invoke general consensus as to their meaning and content. *Id.* Performance standards are not valid if they do not set forth the minimum level of performance that an employee must achieve to avoid unacceptable performance. *Id.*

We agree with the appellant that, absent valid performance standards, the Board cannot evaluate whether the appellant's performance was unacceptable. *See, e.g.*, *Henderson v. National Aeronautics and Space Administration*, 116 M.S.P.R. 96, ¶ 9 (2011); *Ortiz v. Department of Justice*, 46 M.S.P.R. 692, 695 (1991); *Williams v. Department of Health and Human Services*, 30 M.S.P.R. 217, 220 (1986). Therefore, to justify the institution of the PIP by showing that the appellant's performance was unacceptable before the PIP, the agency was required to show that its "minimally satisfactory" performance standard as communicated pre-PIP was valid. We modify the initial decision in consideration of this requirement.

We find no error in the administrative judge's finding that the generic "minimally satisfactory" standard, contained in the definitions section of the appellant's PWP, failed to inform the appellant of what was necessary to obtain an acceptable level of performance. ID at 22. The PWP defined "minimally satisfactory" as the following: "[t]he quality, quantity, manner and/or timeliness of the employee's work are at the minimum level of job retention. Performance at this level shows *significant* deficiencies that require correction." I-4 AF, Tab 5 at 509 (emphasis added). In comparison, the PWP defined "unacceptable" as the following: "[t]he quality, quantity, manner and/or timeliness of the employee's work show *serious* deficiencies. The employee's performance in that element fails to meet minimal requirements for the position." *Id.* (emphasis added). We agree that the "minimally satisfactory" standard, read alone, is not sufficiently precise and specific as to invoke a general consensus as to its meaning and content and does not allow a supervisor to make a verifiable decision regarding an employee. *See Towne*, 120 M.S.P.R. 239, ¶ 21; *Diprizio v. Department of Transportation*, 88 M.S.P.R. 73, ¶ 10 (2001).

However, as the agency asserts on review, the generic "minimally satisfactory" standard contained in the definitions section of the PWP should be read in conjunction with the job elements section of the PWP. I-4 AF, Tab 5

at 508-14; PFR File, Tab 7 at 10-12. We agree with the agency that the administrative judge did not analyze the sufficiency of the PWP when read as a whole. PFR File, Tab 7 at 10-11; ID at 22-23. We find that the job elements section of the PIP renders the generic rating levels less vague because it apprises the appellant of the specific tasks required for "successful" performance of each element. I-4 AF, Tab 5 at 510-14, *Cf. Diprizio*, 88 M.S.P.R. 73, ¶ 11. We further find that, when comparing their performance to "successful" performance of the specific job elements, most professional employees, such as the appellant, would be capable of understanding the terms "significant deficiencies" and "serious deficiencies," and fairly distinguishing between the two rating levels. *Cf. DePauw v. U.S. International Trade Commission*, 782 F.2d 1564, 1566 (Fed. Cir. 1986) (finding language such as "usually" and "few" sufficient to "pass muster" because the work called for subjective evaluation and the agency detailed its expectations of the appellant); *Satlin v. Department of Veterans Affairs*, 60 M.S.P.R. 218, 223–24 (1993) (the use of terms such as "sometimes" and "rarely" were not per se invalid, the appellant's work involved subjective judgment, and the agency satisfactory quantified the rating process in its evaluation). Therefore, we modify the initial decision to conclude that the "minimally satisfactory" performance standard articulated in the PWP, when read in conjunction with the job elements section, passed muster.

We also find no error in the administrative judge's conclusion that any lack of specificity inherent in the performance standards was capable of being clarified. ID at 22-23. The appellant argues that the "minimally satisfactory" performance standard was a "backwards" standard that could not be fleshed out and clarified through subsequent agency communication.[2] PFR File, Tab 3

---

[2] In response to the appellant's petition for review, the agency argues that the minimally satisfactory level was not "backwards" because it included the description "at the minimum level of job retention." PFR File, Tab 7 at 16-17. We find that this phrase is impossible to apply and, therefore, does not communicate any meaningful performance standard. *See Wilson v. Department of Health and Human Services*, 770 F.2d 1048,

at 22-23. In order to be valid under 5 U.S.C. § 4302(c)(1), a performance standard must state in positive terms what an employee must do in order to achieve acceptable performance; it cannot be written in terms of what an employee must not do. *Van Prichard*, 117 M.S.P.R. 88, ¶ 18. Standards of the latter type fall within the category of "backwards" standards that would have to be entirely rewritten, not supplemented, to inform an appellant of what is necessary to achieve an acceptable rating. *Eibel v. Department of the Navy*, 857 F.2d 1439, 1441-44 (Fed. Cir. 1988); *Ortiz*, 46 M.S.P.R. at 695-96. Here, the "minimally satisfactory" rating level permits "significant deficiencies" in the job elements but does not permit "serious deficiencies" and, therefore, is not a backwards standard. I-4 AF, Tab 5 at 509. Rather, the phrase "significant deficiencies," to the extent that it was vague, was capable of being clarified through subsequent communication. *See, e.g.*, *Dancy v. Department of the Navy*, 55 M.S.P.R. 331, 335 (1992) (finding performance standards valid that included terms such as "frequent," "poor quality," and "good quality," as the terms are self-evident, and to the extent they were not, they were susceptible to further clarification by management in the day-to-day communications regarding an employee's work).

<u>To the extent that the agency's "minimally satisfactory" performance standard was vague, the agency's pre-PIP communication informed the appellant of what was required for acceptable performance in JE 1.</u>

The administrative judge found that "any lack of specificity inherent in the performance standards" was cured by the agency's clear guidance during the PIP. ID at 22-23. She concluded that "the generic performance standards together with the appellant's critical element as well as the additional context provided by the PIP" were sufficient to apprise the appellant of what was required to demonstrate "minimally satisfactory" performance in JE 1. ID at 23. As she did

_____

1053 (Fed. Cir. 1985).

not appear to consider whether the agency provided additional context pre-PIP, we do so now.

Because the agency is only required to prove unacceptable performance in one critical element to justify the initiation of a PIP, we will examine whether the agency's performance standards were sufficiently specific to allow a verifiable decision on the appellant's performance with respect to JE 1. I-4 AF, Tab 5 at 509; *see Lee*, 2022 MSPB 11, ¶ 15; *Diprizio*, 88 M.S.P.R. 73, ¶ 10. Concerning JE 1, the agency stated in the appellant's PIP that the appellant did not "address work assignments responsively or use work time productively in support of the office's mission," which corresponded to section (b) of JE 1 as described at the "successful" level in the PWP. I-4 AF, Tab 5 at 412, 510. Specifically, section (b) of JE 1 provided that, at the "successful" level, the incumbent must "[a]ddress work assignments responsively, use work time productively in support of the office's mission, and routinely cooperate with others in meeting the priorities of the office. In order to be successful, the incumbent must share knowledge and expertise with coworkers." I-4 AF, Tab 5 at 510-11.

As discussed above, we find that the "minimally satisfactory" performance standard for JE 1 as set forth in the PWP was sufficient. However, to the extent that it was vague, the agency clarified its expectations of the appellant through day-to-day communication regarding her work. *Cf. Dancy*, 55 M.S.P.R. at 335. As the agency highlights in its response to the appellant's petition for review, the appellant's supervisor provided the appellant with regular instruction concerning her work assignments and deadlines throughout the appraisal period, so much so that the appellant accused him of micromanagement. PFR File, Tab 7 at 15; *see, e.g.*, I-4 AF, Tab 5 at 93. Numerous examples of these pre-PIP communications, including emails in which the appellant's supervisor reminded her of various overdue work assignments and revisions, are referenced in the PIP letter and contained in the agency's file. I-4 AF, Tab 5 at 156-89, 209, 412-14. In addition,

on January 15, 2020, several months before the agency's PIP letter, the appellant's supervisor issued her a written admonishment based on her conduct unbecoming during an informal one-on-one meeting. *Id.* at 90-91. The written admonishment reflects that, during this meeting, he informed her that she was "failing on [her] current deliverables" and provided specific examples including an overdue spreadsheet and her failure to set up a meeting request as instructed. *Id.* Accordingly, we find that the agency communicated its expectations concerning "minimally satisfactory" performance in JE 1 with sufficient specificity before its initiation of the PIP. *Id.* at 156-89, 412-14.

<u>We see no reason to disturb the administrative judge's findings regarding the remaining elements of the agency's chapter 43 removal action.</u>

The administrative judge correctly found that the agency justified the institution of the appellant's PIP by showing that her performance was unacceptable before the PIP. ID at 6-19; *see Santos*, 990 F.3d at 1360-61. She found that the agency's stated reasons in its PIP letter, which set forth numerous tasks required under JE 1, JE 3, and JE 5 for "successful" performance that the appellant failed to timely address, were supported by the record evidence and the hearing testimony. ID at 6-19; I-4 AF, Tab 5 at 156-189, 411-419. The appellant did not dispute most of the agency's evidence, but, when her testimony conflicted with her supervisor's testimony, the administrative judge performed a thorough analysis resolving the credibility issues in favor of the appellant's supervisor. ID at 8-9. We see no reason to disturb her thorough findings or her conclusion that the appellant's repeated failures to meet deadlines demonstrated that her pre-PIP performance was unacceptable. ID at 6-19.

The administrative judge also correctly found that the agency provided the appellant with an adequate opportunity to demonstrate acceptable performance by advising the appellant in the PIP notice of what was needed to achieve the required improvements, providing clear expectations during the PIP regarding the timeliness of her work assignments, and offering assistance. ID at 22-23, 46-48;

I-4 AF, Tab 5 at 243-367, 414; *see Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 32 (2010). She correctly found that, after an adequate improvement period, the appellant's performance remained unacceptable in JE 1. ID at 23-46; I-4 AF, Tab 5 at 111-25; *see Lee*, 2022 MSPB 11, ¶¶ 14-15. The appellant challenges these findings on review by rearguing that the agency imposed upon her a performance requirement of "successful" performance instead of "minimally satisfactory" performance during the PIP. *Id.* at 10-23.

We concur with the administrative judge that the agency's expectations for the appellant's performance in JE 1 as reflected in its PIP letter corresponded with the "minimally satisfactory" rating level. ID at 22-23; I-4 AF, Tab 5 at 414. We also concur with the administrative judge that the agency made a verifiable decision in concluding that, based on the appellant's 33 instances of being late on assignments, failing to turn in assignments, or failing to request extensions of time before the stated deadline—including missing a combined total of 15 firm deadlines on 6 projects, the appellant failed to demonstrate "minimally satisfactory" performance in JE 1 during the 79-day PIP period. ID at 46; I-4 AF, Tab 5 at 111-25, Tab 23-1 (testimony of the appellant's supervisor). In other words, the evidence reflects that the agency satisfactorily quantified "serious deficiencies" versus "significant deficiencies" in the quality, quantity, manner and/or timeliness of her work in evaluating the appellant's performance. *Cf. Satlin*, 60 M.S.P.R. at 223–24.

In sum, except as expressly modified to find that the agency's performance standards as communicated to the appellant before the initiation of the PIP were valid under 5 U.S.C. § 4302(c)(1), we affirm the initial decision sustaining the appellant's chapter 43 removal.

**NOTICE OF APPEAL RIGHTS**[3]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[3] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[4]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[4] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.